ARMSTERDAM ET AL. *v.* PUENTE ET AL.

Appeal from the District Court of Ponce.

No. 364.—Decided June 17, 1910.

ACKNOWLEDGMENT OF NATURAL CHILDREN—ACTS OF ACKNOWLEDGMENT.—There is no doubt that a natural child, showing the existence of acts of acknowledgment such as support, maintenance, medical assistance, affection, and other acts of such a nature on the part of the alleged father, has a right to compel him to acknowledge him as his natural child provided an action is brought within the time provided for by law.

ID.—REVIEW OF OPINION OF THIS COURT IN THE CASE OF GUAL *v.* BONAFOUX.—In the opinion herein delivered the opinion of this court in the case of *Gual* v. *Bonafoux,* delivered June 25, 1909, is reviewed and compared, and it was held that the cases do not differ materially.

ID.—ACTS OF ACKNOWLEDGMENT—STATUS OF NATURAL CHILD.—Repeated acts of implied acknowledgment which give to a child the status of a natural child are not sufficient in themselves to create the legal status of an acknowledged natural child, unless there has been a solemn declaration or acknowledgment made by the father with the intention of producing all the legal effects thereof.

STATUS OF NATURAL CHILDREN—NECESSITY OF ACTION—DECLARATION OF HEIRS.—It is not sufficient in order to create the status of a natural child, by persons enjoying the possession of the status of natural children, to appear before a court and ask that they be declared the heirs of their alleged father, but it is necessary for them to bring an action to secure the acknowledgment where there has been no solemn or authentic acknowledgment thereof.

ID.—CLASSES OF ACKNOWLEDGMENT—VOLUNTARY AND OBLIGATORY.—There are two classes of acknowledgment, voluntary and obligatory. The difference between them has been defined in the case of *Gual* v. *Bonafoux,* decided June 25, 1909, wherein this court discusses the rights of a person whose natural filiation has been acknowledged in a solemn and authentic manner.

ID.—SOLEMN ACKNOWLEDGMENT.—In accordance with the provisions of section 131 of the Spanish Civil Code, the solemn act of acknowledgment of a natural child is that made by the father in the certificate of birth, in his will, or in any other public document.

OBLIGATORY ACKNOWLEDGMENT—ACTS REVEALING THE WILL OF THE FATHER.—In accordance with the provisions of the Spanish Civil Code and the practice and jurisprudence applicable thereto, there is no doubt that where acts are performed by the father which reveal his wish or desire to confer upon his child the status of a natural child, but which do not appear in an authentic manner, the child only had a right of action to compel him to legally confer such status upon him.

ID.—OBLIGATORY ACKNOWLEDGMENT—WHEN ACTION SHOULD BE PROSECUTED.—Article 135 of the Spanish Civil Code and section 189 of the Revised Civil

Code of Porto Rico mention the cases in which a father may be compelled to acknowledge his natural child. Such an obligation can only be enforced by means of an action the prosecution of which is unnecessary only when there has been such a solemn acknowledgment as that defined in article 131 of the Spanish Civil Code.

POSSESSION OF STATUS OF NATURAL CHILD—ACTS OF FATHER.—In accordance with the foregoing doctrine, even supposing that a father has performed a series of acts tending to show that a certain person was his child, nevertheless, it cannot be said that he recognized him within the legal acceptation of the word acknowledgment, and under such circumstances, until the father shall have made a solemn and formal acknowledgment or some declaration before a court, it cannot be said that his child has been acknowledged, nor can it be maintained that he has acquired the civil status of an acknowledged natural child.

ID.—In the case at bar there is no satisfactory evidence to show the intention on the part of the father to recognize his natural children and confer upon them all the legal rights incident to such an acknowledgment.

ID.—TRANSITORY PROVISION OF THE CIVIL CODE—LEGAL MEANING OF THE WORD "DURATION."—The word "duration," employed in the fourth transitory provision of the Civil Code, means the time within which an action may be brought.

ID.—PRESCRIPTION—PERSONAL ACTION—LAW OF TORO.—Under the Law of Toro, all personal actions prescribe after 20 years.

ID.—PRESCRIPTION—SPANISH CIVIL CODE.—In accordance with the provisions of the Spanish Civil Code, an action to compel acknowledgment of a natural child could be brought during the life of the father and up to four years after his death in the case of minors, with certain exceptions provided for by said Code.

ID.—REVISED CIVIL CODE OF PORTO RICO.—The Revised Civil Code of Porto Rico limits the time within which such an action may be brought to two years after majority—that is to say, when the child is 23 years of age—and such a limit is reasonable.

ID.—SYNONOMY OF ACTION FOR ACKNOWLEDGMENT AND FILIATION.—There is such a synonomy between an action for acknowledgment and an action for filiation that an action brought by a natural child for his acknowledgment is necessarily an action for filiation.

PRESCRIPTION—INTENTION OF LEGISLATURE.—We think that both the Legislature which passed the Code of 1899 and that which enacted the Code of 1902, in fixing the period of prescription, intended that it should apply to natural children in order to avoid the great number of abuses and frauds that might be committed if there was no limitation or prescription established therefor.

The facts are stated in the opinion.

*Messrs. Tord, Toro & Canales* for appellants.

*Messrs. W. V. Robbins* and *H. P. Leake* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint in this appeal set forth that Justo Armsterdam, Martin Armsterdam and María Juana Armsterdam were the natural acknowledged children of Don Lázaro Puente y Compostizo, deceased, by María Armsterdam, mother of the complainants, and that each of them is of age; that their said father during his life publicly and privately acknowledged the complainants as his children, called them such in conversation and assisted in their education; that the mother of the complainants lived with their said father during her pregnancy preceding the birth of each of the complainants, their said parents having lived together for upwards of 25 years; that their said father died without making a will and without leaving a widow or legitimate children, and that certain persons resident in Spain allege that they are his collateral or indirect heirs. Then followed a paragraph wherein the names and addresses of these collateral relatives were set forth. Then the complaint went on to pray that all these said persons be summoned and cited by means of edicts in due form that they might appear and set forth their reasons, if any there were, why the complainants should not be judicially declared to be the natural acknowledged children of their said father, Don Lázaro Puente y Compostizo, deceased, and as such children, entitled to the inheritance and the other rights which are given and provided for by the laws of Porto Rico.

The defendants appeared and alleged prescription as their first defense because the complainants were born in 1875, 1879 and 1883, respectively, and that, consequently, the provisions of section 199 of the Civil Code were applicable. They denied the facts of the complaint as a second defense, and filed a cross complaint wherein they prayed that they be declared the heirs of Lázaro Puente. The complainants joined issue on the new matter set up by the answer and cross complaint. At the trial there was evidence of a large number of desultory acts of Lázaro Puente by which he acknowledged each of the complainants to be his child; of the fact that he spent many of his nights with the mother of the children during many

years, although the evidence is clear that at the same time he maintained a separate abode wherein for a large portion of the time he slept and took his meals and wherein none of his said children was at home; there was proof that he contributed to the support of the mother and of each of the children; that he aided in educating them; that he spoke of all of them as his children; that he paid the midwife $5 for her assistance at the birth of each of the children; that he was affectionate towards them, at least in their infancy, and, according to the testimony of the children, their mother, and others, that he treated them as a father would his children. There can be no doubt that these children had a right to compel their father to acknowledge them, provided they brought their action in time.

There was, on the other hand, clear evidence that none of the children even bore the surname of their father, but always that of the mother. There was no evidence of any solemn act of recognition; nothing to show that it was the will of the father that they should be known as his natural acknowledged children with all the legal consequences of such recognition. We do not think that it could be said that Puente lived in concubinage with María Armsterdam, as that relationship is generally understood. Lázaro Puente was a rich merchant and appellants contended that if appellees were his natural acknowledged children it was a strange fact that none of his business associates or acquaintances and none of his relatives should know of the existence of these children.

In reply to this contention appellees say that the fact that they were such natural acknowledged children was commonly known at the *playa* of Ponce and among the early intimates of Señor Puente; that it was natural for a certain group to know of intimate relations existing between a man and a woman while another group of acquaintances did not; that if a man is discreet society at large will not know about such relationship; that men generally conceal their early faults as well as they can and are not disposed to refer to their illicit relations

in speaking to people of high position and good moral character. We adduce so much of the argument of the appellees to show the nature of the relationship between Lázaro Puente and his children, because the principal contention as it now seems to us is that these children had acquired the status of natural acknowledged children, and that such status, even if it had not been acquired before, would have been conferred by each of the successive innumerable acts by which Lázaro Puente acknowledged to a certain portion of the people of the *playa* that Justo, Martín and María Juana were his natural children; that having such natural status it was not necessary for them to bring an action of filiation either in the lifetime of their father or at any time thereafter and that prescription could not run against these children. Given this status, it is substantially urged, it was as unnecessary for the appellees to bring an action of filiation as it would be for legitimate children to do so.

While the present case was pending for decision this court rendered its opinion and judgment in the case of *Gual* v. *Bonafoux,* a decision of this court made on June 25, 1909. The writer of the present opinion concurred in that judgment, but not in all its reasoning, largely because he thought as in dissenting from the opinion in the case of *Desmornes* v. *Desmornes,* decided by this court on June 18, 1907, that the period of two years fixed by section 199 of the Civil Code was a limitation on the right of action which was not capable of being interrupted; an absolute period which could not be waived. Further consideration has convinced him that it is unnecessary in the case under consideration to dwell upon that distinction.

In essence we do not think that the present case can be distinguished from the case of *Gual* v. *Bonafoux,* whether the time within which to bring an action is regarded as a condition precedent or an ordinary period of prescription. In the Gual case there were acts of the father which the judge trying the case might have thought were acknowledgments and entitling

the complainants therein to an action against their father for filiation, if brought in time. There may be a difference of opinion as to the weight of the evidence in the case of Gual, and it might be that the right of action was somewhat doubtful. Nevertheless, the decision of the court was squarely on the ground that the action had prescribed. The appellants there also might have maintained that the acts of Tomás Gual were of a kind that gave them a status which could not prescribe.

The appellants, however, also allege that in the Gual case the father, by omitting mention in his will of his natural children, implicitly denied the filiation and put his children to the necessity of an action. A decision of the Supreme Court of Spain of February 25, 1910, seems to hold that natural children had a right of action which cannot prescribe, even though the father makes a will in which he omits mention of them. Reasoning of counsel is to the effect that although a father acknowledges his natural child, a subsequent denial, directly or indirectly made, is sufficient to cause the necessity for an action. In other words, if in the present case after 20 years of acts of recognition Lázaro Puente had in the 21st denied that the children were his own, they would then have to bring an action of filiation, and the same situation would arise if he made a will and omitted mention of them. If the argument is sound that a single act of recognition creates a status we do not see how a subsequent denial by the father can change such status.

Diligence of counsel has been unable to find any authority for the contention that an action of filiation is unnecessary where natural children have been acknowledged as in the case before us. There is no authority for sustaining that if they have been so acknowledged they need only appear before the court and ask for a declaration of heirship in the same way as legitimate children.

It is conceded that there have always been two kinds of acknowledgments, one voluntary and one obligatory. The dis-

tinction between these two kinds of acknowledgments is drawn in the Gual case, when it speaks of the rights consequent upon a solemn and authentic recognition of natural affiliation (p. 6 of opinion in Gual case). What these acts of solemn acknowledgments are were partly set out in section 131 of the Spanish Civil Code, as follows:

"The acknowledgment of a natural child shall be made in the record of birth, by will, or by any other public instrument."

We think it is a fair deduction from the provisions of the Civil Code, heretofore in existence, as well as the practice and jurisprudence in this regard that, without some authentic act which reveals the will of the father to give the child a status, the child has only a right of action to compel the father to confer such status. Section 135 of the Spanish Civil Code and section 189 of the Porto Rican Civil Code provide for the cases when a father is compelled to acknowledge his illegitimate child. He can be compelled by an action, and the necessity for such action can only be said to be dispensed with when there are some solemn acts on the part of the father, which show that this obligation has already been performed. It is the plain inference from these sections that although a father may have done, as in the case before us, any number of acts to show that a particular person was his child, yet he cannot be said to have acknowledged him according to the legal use of the word "acknowledgment." If he may be compelled then before such compulsion the *desideratum* has not been attained. Until there is some solemn act or some declaration on the part of a court a child cannot be said to have acquired the civil status of an acknowledged natural child. In the case under consideration there was no satisfactory evidence of any intention on the part of the father to acknowledge his natural children with all its legal effects.

The meaning of the fourth transitory provision of the Civil Code has been well discussed in the case of *Gual* v. *Bonafoux,*

and it is unnecessary to repeat what is said there. We do not agree with the construction placed by the Supreme Court of Spain upon the fourth transitory provision of the Civil Code, and we think it is plain that when it speaks of the duration, it refers to the time in which an action may be brought.

Even at the time of the Law of Toro, a personal action prescribed in 20 years. This prescription in the case of the right of action of a natural child to be acknowledged was reduced by the Spanish Civil Code to the lifetime of the father and in case of minors to four years thereafter, except in certain specified cases which do not apply here. By the present Code it is limited to two years after the child becomes of age, namely after he has arrived at the age of 23 years and this we hold to be a reasonable time. Under the Spanish Civil Code the rights and privileges of natural children were increased with a corresponding reduction in time in which they might bring an action for acknowledgment. Under the present Civil Code the rights of inheritance were again increased, and also the manner of proving acknowledgment made a great deal more liberal. The only restraint placed upon the inchoate rights of children who had not been acknowledged voluntarily by their father, was fixed by section 199 of the Civil Code. If this section does not apply to the natural children, when their father may have admitted his paternity, then this provision has no particular meaning or reason for its existence. If what the complainants maintain is true it would never be necessary for a natural child to bring an action of filiation. It is said that this is an action for acknowledgment and not an action of filiation, but an action of acknowledgment or recognition brought by a natural child is necessarily an action of filiation. An action of filiation may have to be brought by a legitimate child under imaginable circumstances, and, therefore, there can be an action of filiation which is not an action of acknowledgment; but, inversely there can be no action of acknowledgment which is not an action of filiation. When the Code of 1902 went into effect it

was notice to everybody that an action to claim filiation would have to be brought within two years after the child attained his majority and, likewise, everybody could take notice when the Spanish Civil Code went into effect that such action could only be brought in the lifetime of the father and four years thereafter, saving the exceptions. The complainants had the right during the period expressed by one or other of these bodies of laws, and, not having brought it in time the action has prescribed.

There are other reasons for believing that it was the intention of the Legislature to limit the right of action. Without such limitation there would be no security to property in the Island of Porto Rico proceeding from a dead man's estate. Nothing less than the time of prescription limited in Book IV, Title XVIII of the Civil Code would prevent an unscrupulous mother from claiming that her offspring was a natural child of a dead man and as such entitled to a share in the estate. The situation that might arise has been well described by the Supreme Court of California in the case of *In re Jessup,* 81 Cal., 423, as follows:

"Of the women who are mothers of nameless children, there are few indeed who would hesitate at any fraud, or to whom perjury would seem a crime, if by means of it a dead father, who had left a goodly estate, could be secured for the nameless one, and this even while continuing in illicit intercourse with the actual father still living. And human nature is so weak, that even men are not wanting who would aid their mistresses in palming off their own children upon the estates of dead men, if thereby a competence could be secured upon which both, with their illegitimate offspring, could continue to live in luxury and in crime."

If this state of affairs might arise in California the danger to be feared, if complainants are right, would be greater in Porto Rico, because in California the requirements of the law for an acknowledgment of natural children are fixed by stat-

ute and are more stringent than the requirements of our Code, even for the case of obliging a father to acknowledge such children.

We think that the Legislature which passed the Code of 1889, as well as the one which passed the Civil Code of 1902, fixing this period of prescription, meant it to apply to natural children, so as to put some end to the kind of litigation which has been described above, and also make it necessary to bring the action when the children are comparatively young and the proof on both sides may be more readily available. It is inconceivable that the Legislature desired to throw the doors wide open to such abuses of property rights, after the death of the father, by an alleged natural child. *Salus populi suprema lex.*

If there is any doubt at all about the question whether a status of a natural acknowledged child is created or not, the question of whether an action has prescribed must be resolved in favor of the Legislative intent as expressed either by section 199 of the present Civil Code or by section 137 of the Spanish Civil Code and in that event every natural child under any condition who did not bring his action in time, as provided by that section, would find himself forever barred. We think that the rights of complainants were barred by the legal precepts, and the judgment appealed from must be reversed and the complaint dismissed.

*Reversed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Figueras did not take part in the decision of this case.